IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

MICAELA MORTIMORE,

        Plaintiff,

v.

ALTUS TRAFFIC MANAGEMENT, LLC,

        Defendant.

## COMPLAINT AND JURY DEMAND

Plaintiff, Michaela Mortimore ("Plaintiff"), by and through her undersigned counsel, HKM Employment Attorneys, LLP, for her Complaint against Altus Traffic Management, LLC ("Defendant" or the "Company") states and alleges as follows:

## PRELIMINARY STATEMENT

1. This is an employment discrimination case arising from Defendant's wrongful termination of Plaintiff for taking approved maternity leave and suffering from complications related to the physical recovery from childbirth. More specifically, in or around the end of November 2018, Plaintiff's pregnancy was diagnosed as high-risk due to high blood pressure. Plaintiff requested a twelve-week leave following childbirth. Though Plaintiff's supervisor told her that twelve weeks of leave would be fine for business operations, Defendant's human resources initially approved Plaintiff for only eight weeks of leave and instructed Plaintiff to check-in with the Company around seven weeks of leave to discuss whether an additional four weeks of leave would be approved. Plaintiff's leave following childbirth began on or about December 28, 2018.

2.  Prior to being on leave from work for a full seven weeks, on or about January 24, 2019, Plaintiff reached out to management and human resources to check-in and request an extension of her leave to a total of twelve weeks. Plaintiff also notified the Company that her doctor had advised that she take leave from work until March 25, 2019 due to medical complications from childbirth that caused Plaintiff to suffer from high blood pressure and frequent migraines. If Plaintiff had been allowed leave until March 25, 2019, her leave would have been for a duration of twelve weeks. Plaintiff's reasonable request for an additional 4 weeks of leave was approved. For example, on February 11, 2019, Plaintiff's supervisor assured Plaintiff she would have a job to come back to and that they would "work the details out when you['re] ready."

3.  On March 8, 2019, Plaintiff reached out to her supervisor regarding her upcoming return to work to inquire about the possibility of working from home upon her return due to childcare issues. That same day, Plaintiff received a call from the Company's human resources, telling Plaintiff that she had the option of resigning right then and receiving her accrued PTO, or Defendant was going to terminate Plaintiff on the day she was expected to return to work, and she would not receive her accrued PTO. Plaintiff was blindsided and asked why she was being terminated. Defendant's human resources representative told Plaintiff that, although she was on an approved leave, her position was purportedly vacant for too long and Defendant hired someone to replace her. In other words, Plaintiff was replaced and terminated because of her sex and/or because she requested and used an accommodation of her childbirth-related medical condition.

## PARTIES AND JURISDICTION

4.  Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

5. Plaintiff is, and at all times relevant to the Complaint was, a resident of Colorado.

6. Defendant Altus Traffic Management, LLC is a Washington limited liability company with an office located at 4975 Paris Street, Denver, Colorado 80239.

7. This Court has jurisdiction over Plaintiff's federal claims pursuant to 42 U.S.C. §§ 2000e-5(f)(3) and 28 U.S.C. § 1331. The Court also has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367, as Plaintiff's state employment claims arise out of the same case or controversy as Plaintiff's federal employment claims. This Court further has jurisdiction over this matter based on diversity of citizenship pursuant to 28 U.S.C. § 1332.

8. Venue is proper pursuant to 28 U.S.C. § 1391(b) as the events giving rise to this suit occurred in this District.

## ADMINISTRATIVE REMEDIES HAVE BEEN EXHAUSTED

9. Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

10. Plaintiff filed her Charge of Discrimination Numbers 32A-2019-0683 and FE2020127547 with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Colorado Civil Rights Division ("CCRD"), respectively, for retaliation, sex, disability, and pregnancy discrimination on July 31, 2019. Plaintiff was issued Notices of Right to Sue from the CCRD and EEOC with respect to the above Charge Numbers and has filed the instant action within ninety (90) days of receipt of same.

11. Plaintiff has met all administrative prerequisites prior to filing this action.

## GENERAL ALLEGATIONS

12. Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

13. Plaintiff began working for Defendant in July 2017 as an Office Administrator.

14. During her employment with Defendant, Plaintiff met or exceeded her employer's legitimate performance expectations.

15. In or around July 2018, Plaintiff disclosed she was pregnant to Defendant's Human Resources Director, Erik San Miguel.

16. After Plaintiff's disclosure, the Company drastically changed Plaintiff's job responsibilities for the worse. For example, Defendant started sending Plaintiff to work in the field to set up lane and road closures more frequently, including requiring her to lift heavy equipment. Plaintiff's job responsibilities changed drastically compared to her normal duties as an Office Administrator prior to her pregnancy disclosure, and she was often asked to perform duties that only certified traffic controllers should perform.

17. Simultaneously, Plaintiff was subjected to unchecked, pervasive and severe harassment from a coworker targeting her pregnancy. For example, in the presence of one of the Company's managers, Matthew Hitchcock, and another supervisor, Shane Sweetalla, Plaintiff's coworker, Nicola "Nickie" Lucero, told Plaintiff that she should quit because of her pregnancy. Ms. Lucero also told Plaintiff that she had purportedly been "b*tchy" and "cranky" because of her pregnancy, that she was more emotional because of her pregnancy, and that she should not be working because of her pregnancy. Despite the harassment taking place in the presence of

managerial employees, upon information and belief, Defendant never took any reasonable corrective action to get the pregnancy-related harassment to stop.

18.     In or around September 2018, Plaintiff requested the reasonable accommodation of twelve weeks of leave following childbirth. Mr. San Miguel told Plaintiff that her request would not be a problem.

19.     On or about November 21, 2018, Plaintiff's pregnancy was diagnosed as high-risk due to her high blood pressure, and Plaintiff notified Mr. San Miguel of same. Plaintiff requested the reasonable accommodation of being allowed to temporarily take modest amounts of time off work to attend routine medical appointments.

20.     Shortly after Plaintiff's request for accommodation of her high-risk pregnancy, Defendant and Mr. San Miguel became less flexible with respect to Plaintiff's long-standing request for twelve weeks of leave from work following childbirth. More specifically, on December 10, 2018, Mr. San Miguel approved Plaintiff for only eight weeks of leave from work following childbirth, even though Plaintiff's supervisor, Wayne Reed, specifically told Plaintiff that twelve weeks of leave would not hurt business operations. *See* December 20-21, 2018 Emails Regarding Plaintiff's Leave Request, **Exhibit A**, p.1.

21.     On December 20, 2018, Plaintiff again requested an additional four weeks of leave following childbirth. Ex. A, p. 1 ("We talked about this since July and I was told it shouldn't be an issue until December 10th. Wayne [Reed] and I discussed it and he doesn't believe that me taking the full time off will hurt operations. I know you make the final call but I think his input has a huge effect on this time request.").

22. On December 21, 2018, Mr. San Miguel responded: "We can evaluate how the business is doing in 7 weeks, please contact us then so we can have further discussion regarding your leave of absence." Ex. A, p. 2. Based on Mr. San Miguel's response, Plaintiff understood that she was expected to contact the Company after approximately seven weeks of leave to see whether her request for an additional four weeks of leave could be approved at that time.

23. Plaintiff's leave was planned to begin on December 24, 2018. However, Plaintiff was required to work on December 24, 2018 because Defendant had previously agreed to vacation time for Mr. Reed and needed someone in the office that day. Plaintiff's leave following childbirth began on or about December 28, 2018.

24. On January 24, 2019, Plaintiff reached out to the Company regarding her request for four additional weeks of approved leave. Because Mr. San Miguel was no longer an employee of the Company by this time, Plaintiff was directed to Connie Wessels, Defendant's Human Resources Manager. Plaintiff notified Ms. Wessels, via a phone call and an email, that her doctor advised that she should be on leave from work until March 25, 2019 due to continued high blood pressure following childbirth that resulted in frequent migraines. *See* January 24, 2019 Email Requesting Accommodation, **Exhibit B**. Plaintiff's email to Ms. Wessels included a statement from her doctor stating she would be unable to work until March 25, 2019.

25. Plaintiff reminded Ms. Wessels that a firm return to work date had not been agreed upon prior to her leave, and that she would get in contact with Mr. Reed to let him know that she expected to be unable to return to work until March 25, 2019. Ex. B. Plaintiff also asked Ms. Wessels to let her know if the Company needed anything else from Plaintiff regarding her leave request. *Id.*

26.     Ms. Wessels told Plaintiff over the phone that she would check in with Mr. Reed and let Plaintiff know if her request for an additional four weeks of leave was *not* approved. Plaintiff never heard back from Ms. Wessels regarding her requested accommodation and reasonably believed her request had been approved.

27.     Additionally, when Plaintiff contacted Mr. Reed regarding her request for an additional four weeks of leave, Mr. Reed also told Plaintiff that an additional four weeks of leave was fine.

28.     On February 11, 2019, Plaintiff contacted Mr. Reed again via text message due to Plaintiff hearing from Mr. Hitchcock that she was supposedly no longer an employee of the Company. Mr. Reed replied to Plaintiff assuring her, "[N]o one is out of a job." *See* February 11, 2019 Text Message, **Exhibit C**. Mr. Reed also told Plaintiff, "Don't listen to rumors … We will work the details out when you['re] ready." Ex. C.

29.     On March 8, 2019, Plaintiff was planning for her upcoming return to work, scheduled for on or before March 25, 2019, when she sent Mr. Reed a text message asking about the possibility of being allowed to work remotely while she arranged for childcare. *See* March 8, 2019 Text Message, **Exhibit D**. Plaintiff told Mr. Reed: "I will let you and HR know closer to but I wanted to let you know what's going on. I haven't talked to HR yet." *Id.*

30.     Within a few hours, Lynda Tschudy, the Company's new Director of Human Resources, and Ms. Wessels called Plaintiff. Ms. Tschudy told Plaintiff that she had the option of resigning right then and getting paid her accrued PTO, or Defendant was going to terminate Plaintiff on the day she was expected to return to work, and she would not receive her accrued PTO.

31. Plaintiff was shocked and asked why she was being terminated. Ms. Tschudy told Plaintiff that, although she was on an approved leave, her position was supposedly vacant for too long and the Company hired someone to replace her.

32. Plaintiff sent Ms. Wessels an email after their call regarding Defendant's illegal ultimatum terminating her employment. *See* Plaintiff's March 8, 2019 Email, **Exhibit E**.

33. Later that same day, Ms. Tschudy replied confirming that Plaintiff was entitled to her accrued PTO, but that Plaintiff was terminated because supposedly Plaintiff's "personal leave ha[d] extended beyond what the business needs could tolerate, [and] at this time we do not have a position for you." *See* Ms. Tschudy's March 8, 2019 Email, **Exhibit F**.

34. In other words, Defendant terminated and replaced Plaintiff for taking approved maternity leave and/or requesting an accommodated concerning a childbirth-related medical condition.

35. Plaintiff was ultimately cleared to return to work without medical restrictions on March 18, 2019, which would have been four days short of 12 weeks of leave following childbirth.

36. During Plaintiff's appeal hearing regarding her application for unemployment benefits, Mr. Reed testified that Plaintiff was supposedly expected to return to work on the arbitrary date of March 8, 2019, the day when Plaintiff texted Mr. Reed about the possibility of working from home. *See* Hearing Transcript, **Exhibit G**, 19:2-7; *see also* 29:2-30:12. However, Mr. Reed also testified that, even if Plaintiff had returned to work on March 8, 2019, her position had already been filled by Defendant around the end of February. Ex. G, 20:15-21:2; 21:13-22:5; 27:20-28:22.

37. Mr. Reed also testified that the Company's human resources directed him to have no further correspondence with Plaintiff after February 11, 2019. *Id.*, 15:7-20.

38. Mr. Reed also testified that the Company's human resources had consulted with him about Plaintiff's request that her leave be extended four weeks, to a total of twelve weeks of leave following childbirth. *Id.*, 18:15-19:1; 33:7-33:19. Mr. Reed testified that he had advised human resources that Plaintiff's request for an additional four weeks would be fine, given that the Company was in the middle of moving facilities and "had no physical location [they] were working out of during the month of February and the very beginning of March [2019]." *Id.* Mr. Reed further testified that human resources had confirmed with him that Plaintiff's request for four additional weeks of leave had been approved. *Id.*, 29:2-30:12; 19:2-7.

39. The Colorado Department of Labor and Employment determined that Plaintiff was entitled to receive unemployment benefits because "there is insufficient persuasive evidence indicating the [Plaintiff] acted volitionally so as to exercise any choice or control over the situation or circumstances leading to the Claimant's separation from employment." *See* Hearing Officer's Decision, **Exhibit H**.

40. In contrast to Mr. Reed's testimony under oath, Defendant's Position Statement submitted to the CCRD contends that Plaintiff was purportedly terminated for failing to return to work on February 18, 2019. *See* Position Statement, **Exhibit I**, p. 8 ("Ms. Mortimore did not return to work as anticipated on February 18, 2019, and Altus required someone to perform the functions of Ms. Mortimore's job. As a result, it was forced to hire an employee in late February to fill the position. On March 8, 2019, Ms. Mortimore was advised by phone that her employment

would be terminated."); *see also* Altus Employment Separation Form, **Exhibit J** (claiming Plaintiff was terminated for failing to return to work on February 18, 2019).

41. Defendant's inconsistent and shifting explanations for Plaintiff's termination are unworthy of credence or belief and indicative of pretext.

## FIRST CLAIM FOR RELIEF
### (Gender and Pregnancy Discrimination in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended by the Pregnancy Discrimination Act of 1978 ("Tile VII"))

42. Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

43. Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, and the Pregnancy Discrimination Act prohibit adverse employment actions that are motivated by an employee's gender and prohibit an employer from discriminating against an employee based on pregnancy, childbirth or related medical conditions.

44. Plaintiff suffered from a childbirth-related medical condition, and Plaintiff was therefore entitled to the protections of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act of 1978.

45. Defendant's termination of Plaintiff's employment was motivated by Plaintiff's gender, pregnancy, childbirth or related medical condition; and was therefore discriminatory and in violation of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act of 1978.

46. Defendant's actions denied Plaintiff equal employment opportunities by subjecting her to different terms and conditions of employment than her male and non-pregnant similarly situated coworkers.

47. Specifically, Plaintiff sought accommodation from Defendant for a medical condition related to childbirth on January 24, 2019 when she requested leave from work until on or before March 25, 2019. Though Defendant initially approved Plaintiff's request, Defendant effectively denied Plaintiff accommodation by replacing her in the end of February 2019 with a nonpregnant employee and terminating her employment on March 8, 2019.

48. Upon information and belief, Defendant has accommodated other nonpregnant employees similar in their ability or inability to work without replacing them and terminating their employment.

49. Defendant's unlawful and discriminatory practices complained of herein were intentional and done with malice or with reckless indifference to Plaintiff's federally protected rights.

50. As a direct and proximate result of Defendant's unlawful and discriminatory practices described herein, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and inconvenience; and she is entitled to such general and special damages, economic damages, punitive damages, and attorneys' fees and costs as permitted by law.

**SECOND CLAIM FOR RELIEF**
**(Discrimination, Failure to Accommodate in Violation of the Pregnant Workers Fairness Act, § C.R.S. 24-34-402.3 ("PWFA"))**

51. Plaintiff incorporates by reference all the above paragraphs as though set forth fully and separately herein.

52. Pursuant to C.R.S. § 24-34-402.3(1)(a)(I), employers shall "provide reasonable accommodations to perform the essential functions of the job to … an employee for health

conditions related to pregnancy or the physical recovery from childbirth, if the … employee requests the reasonable accommodations, unless the accommodation would impose an undue hardship on the employer's business[.]"

53. At the time of Plaintiff's termination on or about March 8, 2019, Plaintiff's pregnancy-related medical condition and accommodations related to same had not caused Defendant an undue burden.  Yet, Defendant denied Plaintiff equal employment opportunities by failing to provide her reasonable accommodation, replacing her and terminating her employment based on the need to make a reasonable accommodation related to Plaintiff's pregnancy, physical recovery from childbirth, or a related condition; in violation of C.R.S. § 24-34-402.3(1)(a)(I), (III).

54. At the time of Plaintiff's termination on or about March 8, 2019, Defendant had not engaged in a timely, good-faith and interactive process to determine the burden, if any, that Plaintiff's requested accommodation would cause Defendant.  Defendant further failed to engage in a timely, good-faith and interactive process to determine the temporary limitations associated with Plaintiff's medical condition following childbirth and the burden, if any, that Plaintiff's request for approximately four additional weeks of leave would cause Defendant before replacing Plaintiff in or around the end of February 2019 and terminating her employment.  Defendant further failed to suggest any alternative accommodations or position modifications that would have allowed Plaintiff to continue her employment prior to denying Plaintiff reasonable accommodation, replacing Plaintiff, and terminating her employment.

55. Defendant's failure to accommodate Plaintiff, and its decisions to replace and terminate Plaintiff, constitute discriminatory or unfair employment practices pursuant to C.R.S. § 24-34-402.3(5).

56. Defendant engaged in the above-described discriminatory or unfair employment practices with malice or with reckless indifference to Plaintiff's rights under C.R.S. § 24-34-402.3 and Defendant failed to demonstrate good-faith efforts to identify and make a reasonable accommodation for Plaintiff's childbirth-related medical condition. Plaintiff is therefore entitled to an award of punitive damages in an amount sufficient to punish Defendant or to deter Defendant and other companies from like conduct in the future.

57. As a direct and proximate result of Defendant's above-described discriminatory or unfair employment practices, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and inconvenience; and she is entitled to such general and special damages, economic damages, punitive damages, and attorneys' fees and costs as permitted by law.

**THIRD CLAIM FOR RELIEF**
**(Retaliation in Violation of the Pregnant Workers Fairness Act, § C.R.S. 24-34-402.3 ("PWFA"))**

58. Plaintiff incorporates by reference all the above paragraphs as though set forth fully and separately herein.

59. Pursuant to C.R.S. § 24-34-402.3(1)(a)(II), employers shall "[n]ot take adverse action against an employee who requests or uses a reasonable accommodation related to pregnancy, physical recovery from childbirth, or a related condition[.]"

60. Defendant's decisions to replace Plaintiff and terminate Plaintiff's employment are actions that a reasonable employee would have found to be materially adverse.

61. Defendant replaced and terminated Plaintiff because she requested and/or used reasonable accommodation(s) related to her pregnancy, physical recovery from childbirth, or a related condition.

62. Defendant's retaliatory termination of Plaintiff constitutes a discriminatory or unfair employment practice pursuant to C.R.S. § 24-34-402.3(5).

63. Defendant engaged in the above-described discriminatory or unfair employment practices with malice or with reckless indifference to Plaintiff's rights under C.R.S. § 24-34-402.3. Plaintiff is therefore entitled to an award of punitive damages in an amount sufficient to punish Defendant or to deter Defendant and other companies from like conduct in the future.

64. As a direct and proximate result of Defendant's above-described discriminatory or unfair employment practices, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and inconvenience; and she is entitled to such general and special damages, economic damages, punitive damages, and attorneys' fees and costs as permitted by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor against Defendant and order the following relief as allowed by law:

A. Economic damages, as established at trial;

B. Compensatory damages, including but not limited to those for past and future pecuniary and non-pecuniary losses, and garden-variety emotional distress, pain, inconvenience, mental anguish, and humiliation;

C. Punitive damages, as permitted by law;

    D.     Attorneys' fees and the costs of this action, as permitted by law;

    E.     Statutory pre-judgment and post-judgment interest at the highest lawful rate; and

    F.     Such further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Dated this 1st day of June 2020.

                **HKM EMPLOYMENT ATTORNEYS LLP**

                By: *s/ Shelby Woods*
                    Claire E. Hunter (39504)
                    Shelby Woods (48606)
                    HKM Employment Attorneys LLP
                    730 17th Street, Suite 750
                    Denver, Colorado 80202
                    chunter@hkm.com
                    swoods@hkm.com
                    *Attorneys for Plaintiff Micaela Mortimore*